252204 East Coast Advanced Plastic v. Cigna Health and Life. Thank you, Your Honor. May it please the Court, Elizabeth Walstein for the Plaintiff Appellant East Coast Advanced Plastic Surgery, which I will refer to as ECAPS, and I've reserved four minutes for  The No Surprises Act strikes an involuntary bargain. An out-of-network provider can no longer charge a patient covered by a health plan more than what the patient would pay if the patient went to an in-network provider. Instead, the Act mandates that the health plan shall pay, shall pay, that's the statutory mandate, what the provider formerly collected from the patient. And if those out-of-network charges are determined by the Act's IDR process, then the Act creates a second statutory payment mandate stating that the payment shall be made in the IDR amount minus the patient's cost share within 30 days directly to the provider. The statute then states that the IDR award shall be binding. According to Cigna, these shall pay mandates and the expressly binding nature of the IDR award mean we can ignore the award, and the District Court agreed with that. ECAPS, to date, has more than 500 IDR awards against Cigna for post-mastectomy breast reconstruction surgeries provided to members of health plans administered by Cigna for which Cigna has never paid anything. How can Cigna's interpretation possibly be correct? If that then the shall pay mandates mean need not pay. The IDR determinations that shall be binding means they are not binding. Well, aren't there some penalties that can be implied not by the courts but by other agencies? Your Honor, there is one, the NSA enacted one statutory payment scheme. That is a penalty that HHS is authored to issue, but HHS's enforcement jurisdiction is expressly limited to health insurance issuers, which are defined in the statute and the regulation as insurance companies regulated by the state. And second coverage of that enforcement statute is non-federal governmental plans. So the plans at issue in our case, as pled in the complaint, the IDR awards are issued against self-funded plans. And HHS, in that penalty statute that is cited by the Fifth Circuit, applies only to enforcement against insurance companies and non-government, non-federal governmental plans. Well, what about the authorizations for the Department of Labor through the ERISA provision and Treasury through the tax code? Okay, so the NSA added no enforcement provision to ERISA, none. That's not in dispute. Cigna never cites one. No case ever cites one because there isn't one. What the NSA added was the one payment, the one statutory penalty provision that we were just discussing, which only, of course, is a penalty. It allows a penalty to be issued, you know, paid to the government. It doesn't authorize any, even HHS, which again, the penalty, that just, that statute does not give jurisdiction over the plans at issue here. But the penalty, if it's going to be pursued, can only be paid to the government. There's absolutely nothing in that statute that allows the agency to pursue payment by the insurance company. Again, but back to the court's question. But, I mean, it is nonetheless an administrative enforcement mechanism that Congress has allowed for there, is it not? Well, I'm not sure I would agree. I think a few of the things that the NSA added, the NSA added no enforcement, no enforcement provision. But it brought it within the purview of the Department of Labor, which then can enforce via fines, administrative action. No. No, yes, I'm sorry. Yes, because there's no, you know, administrative provision that the, and the NSA absolutely says nothing about DO, about it giving DOL any new powers. Isn't it correct, what about the states? Isn't it correct that the states have primary authority to, quoting, require that health insurance issuers that issue, sell, renew, and offer health insurance coverage in states, the individual or group market, meet the requirements of this part? Again, health insurance issuers, which are defined in the statute as state-regulated insurance companies. That's not the IDR awards we have in this case. But I also want to address the, is it enforcement? We were reminded a few days ago in the Saba Capital case from the Supreme Court that what is required for this element of the Sandoval analysis, if you want to look at this case that way, which I can explain why this is just a narrow slice of Sandoval, what is required is a comprehensive agency enforcement scheme, a comprehensive agency enforcement scheme. I think it's quite questionable whether a penalty provision applicable to, again, not applicable here, applicable to insurance companies. If you want to consider that question, you don't need to decide it for this case. But that is the standard. Is it a comprehensive agency enforcement scheme? And in that case, in the Saba Capital case, the- Well, are you saying that if Congress, in effect, blew it and didn't broaden the enforcement power sufficiently or make them sufficiently onerous, that it follows automatically that there's a private right of action? I'm not saying it follows automatically. I'm saying the text and the structure of this statute, which is quite sui generis, makes very clear that private enforcement is not precluded. Otherwise, the statute has absolutely no meaning. I mean, the whole, you know, IDR process is a meaningless charade because you have these people going through these, their roles and their acting, but they can never, CIGNA can never be made to pay anything. And that's just upside down world. Statute that says shall pay means need not pay. But I want to talk about the very sui generis nature of this statute and why it really doesn't fall within the mind run of the Sandoval cases. And that, so there's no concern here about floodgates because no one has identified any statute that looks like this. There are really three aspects of the statute that, you know, make it very, very specific and particular and also, you know, reflect, you know, the structure of the statute reflects an intent to allow for private enforcement. It could not be any other way. So not that the agency, not that the Congress made a mistake. The Congress made clear its intent through the text and the structure of the statute that private enforcement of the IDR awards is expected. It's expected because, I mean, there's a lot of things I could discuss like the, that the courts have relied on that are simply not right. I mean, let me get back to the, why the enforcement won't open the floodgates. So unlike, you know, the mind run of the Sandoval cases, here you have three attributes that are just bring this statute into a very unique position. One is that before the provider ever files the action to enforce, the liability is fixed. It's fixed in the final IDR award. So the court is not doing any fact finding. It's not interpreting statutes. It's simply engaging in what the court described in the D.H. Blair case as a summary proceeding to turn into a federal judgment, a final determination that has already been fixed. But secondly, the statute already creates the right. I think this is the key point that may trouble some of the judges under the Sandoval analysis. The statute creates the right. It has the A shall pay mandate. The court is not being asked to create the right. And we know that through the Keytronic and the AT&T case that was just a side of that footnote that says a statutory mandate of A shall pay B creates the right. So unlike in the Saba Capital case where the statutory language was no court shall not deny rescission at the instance of any party, that's clearly not rights creating language in favor of any individual. The statute here with the shall pay mandate, that is the significance of these cases that say a shall pay mandate is by definition rights creating language. So then the question becomes what about the administrative remedy? And really there's one central answer to that. And that is the HHS penalty statute does not give HHS any enforcement jurisdiction over the IDR awards at issue here. And that's not in dispute. Cigna cited a bunch of factual material. Mr. Wolstein, you've reserved some time for a photo. Would you like to use that now? No, I'll wrap up. Okay, why don't we hear from your adversary? Thank you. May it please the court, my name is Richard Nicholson and I represent Appalachia Cigna. The No Surprises Act does not grant an implied private right of action to a health care provider like ECAPS for three reasons. First, the NSA barge judicial review except for vacature of an IDR is set forth in section 10. Yeah, that's set a relevancy to the issue here, isn't it? We're not talking about review, we're talking about enforcement. Your Honor, the Fifth Circuit and a number of other courts have found that when the court is talking about judicial review in the context of an arbitration award, and I think the Hall Associates case, the concrete products case has described judicial review of an arbitration award to include enforcement of the award. I know that the Fifth Circuit thinks that way, so be it for the Fifth Circuit, but it's not binding on us and it doesn't make any sense to me. I understood, Your Honor, but then if you read the judicial review with the lack of incorporation of section 9, which is the second reason. That's a more telling point. The second reason why the NSA does not create a private right of action is Congress could have incorporated section 9, but didn't. And that's directly relevant to the remedy that ECAPS is seeking here. And then the third reason why there's not a private right of action is that the NSA, as Your Honors all keyed into, contemplates administrative enforcement by state and federal agencies, including HHS, DOL, and the Treasury. Yeah, so what about the argument that, maybe because it was poorly drafted or whatever, that the HHS remedies don't apply to SIGMA? I think, frankly, that's incorrect. I think, as Judge Park pointed out, the statute was incorporated into ERISA, and that DOL has some of the broadest enforcement powers of any of the agencies in that respect. And it was also incorporated into the Internal Revenue Code. And there are penalty provisions that almost mirror, identically, to the HHS penalties in 300GG22. And that's not a mistake. Contrary to what my friend debated the court, the HHS penalties were also pre-existing. They were part of HIPAA. And so were the Treasury provisions. So they're almost identical in all respects. So really what that evidence is, as I think Judge Park indicated, was that Congress was dropping the NSA into these enforcement provisions, both for HHS, but for DOL and for the Treasury, to existing enforcement mechanisms, which is common. There's no reason to create new enforcement mechanisms when the existing ones are sufficient. And I would say for ERISA plans, in particular, that the enforcement mechanisms here are broader, just given DOL's broader jurisdiction, in which I think even the DOJ in their amicus brief in the Fifth Circuit case admitted. They can bring enforcement actions and other relief that even maybe HHS doesn't have. And I think court after court after court has found that the HHS remedies are sufficient to show that Congress did not intend a private right of action. How does it work? So ECAPS has an IDR award. And you're saying that these various agencies have authority to either fine or maybe initiate a lawsuit. How do those things connect? Because we're looking to see if Congress intended to provide an alternative scheme. And so there has to be some kind of achievement of that goal. Understood, Your Honor. So all of the statutes required HHS, DOL, Treasury, and consultation to create a complaint process. And that complaint process allows for basically CMS sitting as an umbrella on top of those various agencies to receive complaints and then to allocate them to the party with the relevant jurisdiction. So I think in the government accountability report we cite at page 10 of our brief, those complaints then get sent to DOL and DOL will look at them. And, you know, at least as of 2023 when that report came out, in kind of the very early stages of the rollout, DOL would then contact the payor and then discuss, you know, why are you not paying the awards? And I think DOL in a footnote in that opinion, I think it's on page 40, said we've achieved over, you know, $6 million in recoveries at that point, closing, you know, 480 complaints. So I think that is the remedy that Congress intended. And then, you know, also there is the penalty provision that Your Honor's all pointed to. And the threat of that penalty, which is $100 a day, and in the case of many of these awards could exceed the award after, you know, a short amount of time, is a further coercive remedy that will, you know, compel payors to comply with the statute. So, you know, ultimately I think the Congress here envisioned a IDR process that was out of court and then created out-of-court remedies through the agencies to compel compliance with the award. And, you know, my friend also kind of touched on the FS credit case last week. I mean, that case, the salience of it is it expressed the court's exacting standard for applying private rights of action. And it reaffirmed Alexander v. Sandoval, which we rely on in our briefs. And as this court recognized in the Lopez case, the statute must yield a clear manifestation of congressional intent to create a private right of action. I would say between the statutory text that I referred to, this text, you know, section judicial review is limited except for section 10, the lack of incorporation of section 9 and the administrative remedies. Congress did not... ...you have the rights creating language here. You don't dispute that, the must pay. So the rest of it is sort of negative inference. Is that how we... I think there is, you know, multiple cases have found and cases that go our way have found that there's rights creating language. But this court in Murphy Medical from a couple of years ago found there may have been rights creating language in the CARES Act, which also had shall reimburse language. But the court there then went through the analysis that I just went through, looked to the administrative remedies, and then looked to the text of the statute to see if the remedy that the plaintiff was asking for is evidenced in the statute. And I would say between the text saying that there is no right to confirm these awards and expressly not incorporating section 9, when the court had already referred to section 10 and Congress knew that it could have, that negative inference of this, you know, cardinal canon of statutory interpretation that you shouldn't have read into the statute, a remedy that Congress expressly did not add when it knew it could have. But, you know, I would say here the NSA does not yield a clear manifestation. And that's the standard this court set out in Lopez as it was relying on Alexander v. Sandoval. And, you know, in addition to the Fifth Circuit, courts from around the country have independently reached that conclusion as well. I think also, you know, it's important here, I think, counsel pointed to the binding language. And I think there's maybe one or two courts that have, you know, district courts that have relied on the binding language. But the context where that binding language has been found significant by other courts have been in the context where, like the Chemerova case with the FIFRA, there were expressed provisions either in the statute or later adopted through regulation that gave a mechanism to enforce the awards. In the Chemerova case, it was the adoption of the judicial mediation, the federal mediation rules that basically said we consent for these awards to be, you know, enforced in court. Again, Section 9 doesn't do that here. And, you know, for ECAP's argument, if it's true that Section 9, the fact that Section 9 wasn't incorporated, that it's not significant and it shouldn't apply it, then why would Congress have included Section 10, incorporated Section 10? And also, if it's not significant that Section 9 wasn't included, why would these be confirmable at all? There's really nothing in the statute other than the binding language that suggests that these should be enforceable in court. And that binding language is also binding between the parties. It's not binding on a court or anyone else. Can I go back to Judge Rakoff's question about the HHS Enforcement Authority? As I read it, it applies to health insurance issuers and not group health plans. I just want to make sure I understand. So what Congress envisioned here was kind of interlocking enforcement. And as the court likely knows, health insurance plans in this country are regulated by various authorities. I think Judge Lamal pointed to state-regulated plans that would be insurance plans. And then, you know, HHS has jurisdiction if the states don't step in and for also non-governmental plans. The ERISA plans are governed by DOL and also by the Treasury. And that's why the NSA was incorporated into both of those statutes. And both of those statutes have nearly identical, and I would argue, broader authority to enforce the statute that HHS does. Okay, but I guess specifically to the IDR award here, is that something that HHS, as to CIGNA, has some authority to? I think it does, kind of in the initial complaint process. Because again, kind of all three of these entities work together. Because it starts at CMS? CMS has kind of the general authority. If you look at the Government Accountability Report we cite at page 10, the way that the government has interpreted this is CMS sits on top, it creates a complaint process, and then can dole the complaints out to the relevant jurisdiction, like the DOL, who, as in that report is clear, is enforcing the statute. Okay, so it sounds like, what you're arguing, that these various administrative authorities are sort of part of a scheme that isn't necessarily, look, you have three or four different options. It's part of one process that starts at CMS, and then gets funneled to the appropriate agency, tasked with enforcement over this particular? I think that's absolutely right, Judge Park. And again, that's because the various entities in this country that have jurisdiction over various health plans are different. So Congress really, I think here shows, Congress really was thoughtful in making sure that all the relevant statutes that govern the various health insurance plans in this country had an enforcement mechanism, and by incorporating the NSA into these various statutes, showed and made sure that the enforcement would be permitted. So am I correct that you acknowledge that there is no agency that has the authority to say you are directed to pay the amount? I think there are a number of different ways in which different authorities can impose penalties for not doing it, but nobody has the authority to say, pay it. I would say that, I'd say for a risk plan, certainly DOL has broad authority to enforce the statute in violations of the statutes. And I think HHS in the government accountability report has gone to insurance payers and said, you should comply with the statute and pay it. Well, you should comply with the statute and pay it, or that's a little different from you are directed, a direction that carries the force of law to pay. Certainly, I think that it is clear within the statutes that the enforcement agencies have the ability to apply penalties, and those penalties will start to exceed often the amount of the award in a short amount of time. It certainly has the enforcement power to assess penalties, to comply with the statute, which is a common way that the government and Congress enforces statutes. Just to sum up, the Supreme Court was clear in Alexander v. Sandoval that without clear textual support in a statute, a court cannot create a right of action, no matter how desirable that might be as a policy matter or how compatible with the statute. This means that even if courts don't agree with Congress's choices, when Congress has spoken, courts must listen and enforce the statute that Congress has written because the NSA structure and text here clearly show a private right of action was not intended. The district court should be affirmed, and unless the court has questions about the alternative argument of the Declaratory Judgment Act, which we think is barred by this court's precedent in the specialist litigation in Chevron, we refer the court on our papers on that, unless the court has any other questions. To say that courts don't have the authority to create a private right of action, there's a big gap between that and saying that hypothetical private rights of action created by statutes will not be enforced unless they are clearly stated. In other words, supposing that this statute didn't provide for any of the enforcement mechanisms that you were relying on, so that one, when reading it, upon thinking about it, would conclude, well, necessarily this statute creates a private right of action. It's not clearly stated, but it's clearly there if you consider all the moving parts, because otherwise the statute's meaningless. So does Sandoval mean, does Sandoval mean that not only must it be clear that the private right of action is there, but also it must, in addition, be clearly stated? I think the principle that Sandoval stands for that is even if there is rights-creating language in the statute, you need to look to if there's a remedy. And I think on that score, what the court has found, both in Sandoval, then just last week, and at this credit is, if there's an existing enforcement mechanism for the statute, then that goes to and shows that Congress did not intend a private right of action. And I would just say that the clearly sufficient language that counsel pointed to, the genesis of that was the Middlesex case, which was a 1983 case. 1983 is a whole different ballgame than the Sandoval FS credit doctrine, because under 1983, Congress specifically passed a statute that offers judicial remedies to parties to sue the government. And if you look at some of the case law in the 1983 context, the presumption is there is a right of action, unless there is a clearly sufficient enforcement mechanism. So I would submit that that language is clearly inapplicable in the Sandoval FS credit line of cases. It is the existence of the remedy that matters, not the sufficiency. And I think the case law that is developed around the NSA, both from the Fifth Circuit and other courts, have really honed in on that. Because ultimately, that is the argument that ACAPS is making, that the remedies are insufficient. And I think it was either Judge Rakoff or Judge Hart pointed out, that is something for Congress and the agencies to fix. And they are fixing the act. And just last month, CMS passed a new rule that is trying to improve the process and try and address some of the non-payment issues, which often stem from ineligibility. And frankly, that is the issue with DCAPS's claims. Because I would just direct the court to both the district court's decision and the complaint. These claims were denied. They were denied for fee forgiving. They are not covered. They should have never been submitted to our IDR process. And I would point the court to our 28-J. Judge Brody in the Eastern District had a case very similar, where it was a denied claim. And found that this was not what the NSA was designed for. Those claims should be going through the general administrative processes of a plan. And DCAPS here has tried to improbably insert them into the IDR work. So this is not the case to be reading into how the statute should be working. So again, unless the court has any other further questions, I have nothing else. Thank you. Thank you, Mr. Nicholson. We'll hear rebuttal. Thank you, Your Honor. Just a few points to address. First, clearly, HHS, as the court identified that health insurance issue or language, that is the key scope of what HHS is allowed to act against. I would direct the court to the factual material cited by CIGNA that describes CMS's, HHS's jurisdiction on page 38. This is in our reply brief. This is the GAO report. The market conduct examination on an issuer would not include issuers other lines of business for which CMS does not have authority, such as plans under DOL's enforcement authority, including self-funded employer-sponsored plans. The Fifth Circuit speaks of the penalty being against the insurance company. The government's brief in the Fifth Circuit speaks of the penalty being as to insurance companies within the HHS jurisdiction. It's not disputed. As to these emanations, we're not dealing with emanations from statutes. We are dealing with interpreting specific statutory text, okay? There is no emanation from ERISA. There's no statutory text in the NSA that says, okay, just use ERISA. It doesn't even say that. It says nothing. It says nothing. And what is ERISA as a statute? It is a statute that regulates relationships between private employer plans and their fiduciaries and beneficiaries. ERISA does not speak to out-of-network providers. It has nothing to do with out-of-network providers until the NSA enacted this shall pay mandate. So, I mean, on that point, counsel had to admit, he had to acknowledge that there is no DOL statute that allows for DOL to go say, plan, you have to pay this IDR award, okay? An emanation at where the statute is codified is not a comprehensive agency enforcement scheme that we know is the thing that has to be satisfied. We know from the Supreme Court's decision a few days ago, codifying a provision in ERISA does not make it a comprehensive agency enforcement scheme. As to the court's question about Section 9 of the FAA, Section 9, Congress had every reason not to include Section 9. Section 9 of the FAA deals with agreements to arbitrate. It is the statutory basis for seeking confirmation of arbitration awards that ensue from agreements to arbitrate. We're not dealing with an agreement to arbitrate here, obviously. It's a statutory alternative dispute scheme. So there's no reason to, and it's the site that every court and Cigna and the Fifth Circuit and the whole echo chamber site. I'm not sure I follow that argument. They specifically here copied the Section 10 of the FAA which sets the standards for the substantive review and they therefore seemingly purposely excluded the enforcement provision that's in the FAA. And why isn't that, at a minimum, a hint that there shouldn't be judicial enforcement? On this, I really commend to the court Judge Underhill's discussion in the April 2026 District of Connecticut case which explains exactly the structure that Congress selected. It says, awards are binding. Number two, they shall not be subject to judicial review except in these narrow circumstances. So that structure tells us they're binding unless the defendant, the party, makes a motion to vacate, in which case the motion to vacate can only be granted if these four narrow grounds from the FAA apply. That is why that is incorporated. There's no need to incorporate Section 9 for multiple reasons. A, it doesn't apply on its face because it deals with agreements to arbitrate. Number two, as the PHI decision from the District of Maryland, also an excellent analysis, but the statute provides its own statutory basis to enforce under this structure. Binding, no judicial review except if one of these four circumstances is met. No judicial review means no challenge to the merits of the decision. Number three, what I started to say is the only statute that everyone ever cites, the Fifth Circuit, oh, well, if Congress wanted to allow for confirmation, it would have included Section 9. I just explained why not. They cite this statute, 5 U.S.C. 580. That's part of the Administrative Procedure Act, part of the Alternate Dispute Resolution provisions of that. Okay, but that involves arbitration agreements. If you look at 575, it says, a written arbitration agreement will be submitted to the arbitrator so he knows what the scope of the arbitration is to be. That is a written arbitration agreement that therefore incorporates Section 9 of the FAA. So you have a citation to a statute that Congress didn't, when it wants to provide for enforcement, it incorporates the language. It's already there. It's already there. 580 involved an arbitration agreement. It's already there through this structure that Judge Underhill discusses in a very cogent way. Binding, meaning must be enforced, only subject to vacator on these four grounds. And also, why would there be a provision referring to Section 10 vacator if the awards were not otherwise enforceable? It's just surplusage. You wouldn't need to vacate an award unless it's enforceable otherwise. And the government's amicus brief in the Fifth Circuit makes that point. Judge Underhill makes that point. I don't know, unless you're going to read out, you're going to, under their reading, read out binding, and then this reading the judicial review means you can't confirm, reads out the whole structure. You don't need vacator unless otherwise the awards are enforceable. Thank you, counsel. Thank you both. We'll take the case under refreshment. Thank you.